Anthony G. PERRY, Appellant–Plaintiff,

v.

STITZER BUICK, GMC, INC., David C. Stitzer, President, Byron V. Stitzer, Secretary–Treasurer, Tony Houk, Sales Manager, Tony Houk, Individually, Dick Loury, General Manager, Dick Loury, Individually, Appellees–Defendants.

No. 41A01–9205–CV–156.

Court of Appeals of Indiana, First District.

Nov. 30, 1992.

John O. Moss, Indianapolis, for appellant-plaintiff.

Michael V. Gooch, Patricia Polis McCrory, Douglas A. Tresslar, Harrison & Moberly, Indianapolis, for appellees-defendants.

1. 42 U.S.C. § 1981.

BAKER, Judge.

Anthony Perry has a talent for salesmanship. In fact, for four straight years his previous employer, a local shoe company, honored him as its "employee-of-the-year." When Perry decided to leave his shoe-sales career in favor of higher commissions in the car industry, he had no reason to expect anything but success. For a while he was right. From a pool of over 100 applicants, Stitzer Buick selected Perry to become one of its new trainees. Eight of the ten trainees quit before the end of the training period; Perry, however, completed the training program and soon was establishing himself as one of Stitzer's top salespeople. It was a familiar feeling for Perry; he could sell anything, from $25.00 shoes to $25,000.00 cars.

Perry's promising career with Stitzer was cut short, however, when Perry was fired, without explanation, shortly after completing the training program. In response, he sued Stitzer, the corporate entity, and Stitzer employees Tony Houk, Carl Weidner, and Dick Loury, individually. Perry sought compensatory and punitive damages for alleged violations of Title VII of the Civil Rights Act of 1964,[1] the Civil Rights Act of 1991,[2] and Indiana common law.

The trial court granted Stitzer's motion for summary judgment. Although Perry advanced several potential theories for recovery, the trial court's order failed to identify the deficiency of each claim; instead, Stitzer's summary judgment motion was granted without explanation. Perry now appeals this ruling, raising eight issues for our review, which we consolidate and restate as:

I. Whether the Civil Rights Act of 1964 provides Perry with a viable theory of liability.

II. Whether the Civil Rights Act of 1991 applies retroactively to provide Perry with a viable theory of liability.

III. Whether the Worker's Compensation Act precludes Perry's tort claims:

2. 42 U.S.C. § 1981, 1981a.

a.  against Stitzer; and

b.  against Houk, Weidner, and Loury, individually.

## STATEMENT OF FACTS

The evidence most favorable to Perry, the non-movant, reveals that in July or August, 1987, Stitzer hired Perry as a car salesman for its dealership in Indianapolis. Perry, a black male, alleged that he was subjected to recurring episodes of racial discrimination while employed at Stitzer. He testified that whenever he approached Tony Houk, Stitzer's sales manager, concerning a potential sale, Houk responded with vile, vulgar language, and called Perry various derogatory names including "son-of-a-bitch," "motherfucker," "stupid," and "dummy." *Perry deposition* at 114–15.[3]  Perry complained to Richard Boone, Gordon Heinriech, Mike Deem, and Richard Meyers, all Stitzer managers, but no action was taken. *Perry deposition* at 122.

On one occasion, Dick Loury, Stitzer's general manager, approached Perry and Derrick Burrows, a black co-employee, and asked, "Derrick, where did you get that car? What, did you steal it like all you black people always do?" *Perry deposition* at 110. Perry immediately complained to Boone and Houk, but again no action was taken; instead, Houk "just laughed it off, he didn't care." *Perry deposition* at 112–13.

In November, 1987, Perry told Loury that Carl Weidner, Stitzer's leasing manager, had called him a "nigger." *Perry deposition* at 123, 176–78. On that occasion, Perry and Heinriech were discussing company business when Weidner approached the two and said "he will always be [Weidner's] token nigger because he owed [Weidner] $10.00." *Perry deposition* at 124. Although he admits Weidner did not specifically refer to him, Perry believed it was a racial slur directed at him. *Perry deposition* at 129. The following day, during a sales meeting attended by all Stitzer managers and salesmen, Weidner said Perry would not be at the meeting because "he

[Weidner] had called Perry a nigger the day before." *Perry deposition* at 129.

On November 17, 1987, an elderly black couple was on the Stitzer lot looking at cars. When Perry told Houk the couple was not ready to buy, Houk told him "to go in and work a deal with them any damn way [Perry] could, force them into making a buy." *Perry deposition* at 135. After the couple left without buying a car, several managers and salesmen heard Houk call Perry a "black son-of-bitch" and "motherfucker," and saw Houk shove Perry and pull him into an office. *Perry deposition* at 135. In the office, Houk called Perry a "black son-of-a-bitch" and a "no good motherfucker" and told Perry that "if he didn't do exactly as he was told and force people to buy a car, [Perry's] ass would be out of here." *Perry deposition* at 135–36. Perry left the office visibly upset while his co-employees stood at the sales desk laughing and joking about the incident. *Perry deposition* at 136, 143. The following day, Houk fired Perry without explanation.

Perry did not file a claim for Worker's Compensation, but filed suit in Marion Superior Court, Civil Division, against Houk, Weidner, and Loury on grounds of assault, battery, slander, and emotional distress, and against Stitzer on a theory of *respondeat superior*. Stitzer and Houk, Weidner, and Loury moved for summary judgment on all counts; their motions were granted, and this appeal ensued.

## DISCUSSION AND DECISION
### Standard of Review

■  As the 1991 amendments to Ind. Trial Rule 56 make clear, this court is not free to search the entire record in determining the propriety of the trial court's grant of summary judgment. To the contrary, we may consider only those portions of the record that were *specifically designated* to the trial court.

■  Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any

---

3.  Perry placed his 255–page deposition in an envelope marked as page 249 of the record; thus, for convenience and clarity, we will cite to page numbers of his deposition.

material fact and that the moving party is entitled to judgment as a matter of law. *Koenig v. Bedell and Aetna Insurance Company* (1992), Ind.App., 601 N.E.2d 453. When a defendant is the moving party, it is entitled to summary judgment as a matter of law if it can demonstrate that either the undisputed material facts negate at least one element of the plaintiff's claim, or if it raises a valid affirmative defense which bars the plaintiff's claim. *Moore v. Sitzmark* (1990), Ind.App., 555 N.E.2d 1305, 1306–07. If a defendant cannot make one of these showings, summary judgment is inappropriate. *Id.* Any doubt as to a fact, or an inference to be drawn therefrom, is resolved in favor of the nonmoving party. *Bischoff Realty, Inc. v. Ledford* (1990), Ind.App., 562 N.E.2d 1321, 1323.

## I. Civil Rights Act of 1964 (§ 1981)

■ The trial court concluded § 1981 of the Civil Rights Act of 1964 provided Perry with no cause of action under the circumstances alleged. Perry challenges this ruling.

Prior to its 1991 amendment, § 1981 read, in pertinent part, as follows:

(a) All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. *Patterson v. McLean Credit Union* (1989), 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132, 147. It cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, however, for it expressly prohibits discrimination only in the making and enforcement of contracts. *Id.* at 177, 109 S.Ct at 2372, 105 L.Ed. at 151. Section 1981 protection simply did not extend "to problems that may arise from the conditions of continuing employment." *Id.* Because Perry's claim concerns only conduct occurring *after* he began work, § 1981 provides him no relief.[4] The trial court did not err in so ruling.

## II. Civil Rights Act of 1991

■ Perry next argues the trial court erroneously concluded the Civil Rights Act of 1991 afforded him no relief.[5] The trial court ruled that the conduct in question occurred well before the Act was created and that the Act should not be applied retroactively, even if it did provide Perry a cause of action.

The federal courts of appeals which have addressed this issue have unanimously rejected retroactive application. *See Rush v. McDonald's Corporation* (7th Cir.1992), 966 F.2d 1104; *Johnson v. Uncle Ben's, Inc.* (5th Cir.1992), 965 F.2d 1363; *Fray v. Omaha World Herald Co.* (8th Cir.1992), 960 F.2d 1370; *Vogel v. City of Cincinnati* (6th Cir.1992), 959 F.2d 594. We have examined these opinions and find their reasoning compelling. We decline Perry's re-

---

**4.** We observe that although § 1981 provides Perry with no relief, 42 U.S.C. § 2000e–2(a)(1), which makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," would seem to harbor a cause of action for Perry. Additionally, "[r]acial harassment in the course of employment is actionable under Title VII's prohibition against discrimination in the 'terms, conditions, or privileges of employment.'" *Patterson, supra,* 491 U.S. at 180, 109 S.Ct. at 2374, 105 L.Ed.2d at 152. Perry, however, chose not to rely on the

Title VII administrative remedy afforded by the EEOC and obtained no "right to sue" letter from that body.

**5.** The Civil Rights Act of 1991 provides in pertinent part:

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. sec. 1981, as amended.

quest to give retroactive effect to the 1991 Act.[6] The trial court did not err.

### III.  Perry's Tort Claims

■ At this point, it is necessary to separate Perry's claims against Stitzer from his claims against Houk, Weidner, and Loury. An employee's claim against his employer may be covered by the exclusive remedy provision of the Worker's Compensation Act even though his claim against fellow employees is not.  *Fields v. Cummins Emp. Fed. Credit Union* (1989), Ind.App., 540 N.E.2d 631, 635.

### A.  Perry v. Stitzer

Perry argues the trial court erroneously concluded that the Indiana Worker's Compensation Act provides his exclusive remedy.  Stitzer defends on the grounds that the Act's exclusive remedy provision precludes Perry's tort claims and that even if it does not, Stitzer is not responsible for the misconduct of its employees.  We address each of Stitzer's defenses separately.

#### (1) Worker's Compensation Act

■ The Worker's Compensation Act provides the exclusive remedy for employees seeking a compensatory remedy against an employer when three statutory jurisdictional requirements are met:

1.  personal injury or death by accident;
2.  personal injury or death arising out of employment;
3.  personal injury or death arising in the course of employment.

*Gordon v. Chrysler Motor Corp.* (1992), Ind.App., 585 N.E.2d 1362, 1363, *trans. denied; see also* IND.CODE 22–3–6–1(e) (personal injury defined as "injury by accident arising out of and in the course of employment. . . .").  Actions for employee injuries or death which do not meet each of these prerequisites are not excluded and may be pursued in the courts.  *National Can Corp. v. Jovanovich* (1987), Ind.App., 503 N.E.2d 1224, 1232, *trans. denied.*

In *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, our supreme court recognized that if an employer intentionally injures an employee, the Act does not apply.  "Public policy reinforces this conclusion since it would be a total perversion of the humanitarian purposes of the Act to permit an employer to use the Act as a shelter against liability for an intentional tort."  *National Can, supra,* at 1232.  Since the activity complained of would constitute an intentional tort, the trial court erred to the extent it granted summary judgment on the basis it had no jurisdiction to entertain Perry's claim alleging an intentional tort against his employer, Stitzer.

#### (2) *Respondeat superior*

■ Although we find Perry's claims are not barred by the exclusive remedy provision of the Worker's Compensation Act, we still must determine whether Stitzer is liable for the conduct of Houk, Weidner, and Loury.  Perry argues that Stitzer may be held vicariously liable for the misconduct of its employees.  Stitzer denies responsibility.

■ The doctrine of *respondeat superior* holds an employer accountable for the wrongful acts of its employees when the employee is acting within the scope of employment.  *Shelby v. Truck & Bus Group Div. of GMC* (1989), Ind.App., 533 N.E.2d 1296, 1298.  In order to be within the scope of employment the employee must be in the "service of the employer."  *Id.*  To shift culpability to the employer for an employee's torts committed while in the employer's service, the plaintiff must show that "the actor was the employer, one acting pursuant to the employer's direct order or one acting as the alter ego of the corporation."  *Id.,* citing *National Can Corp., supra* at 1233 n. 13.  Moreover, Perry must also prove that Stitzer "had an actual intent to cause the harm complained of."  *Id.*

The record reveals Houk, Stitzer's sales manager, determined profit margins, ran sales meetings, made hiring and firing decisions, and finalized car sales.  Weidner, Stitzer's leasing manager, and Loury, Stit-

---

**6.** Although not mentioned in Perry's brief, we note Perry's counsel recently lost this exact argument in *Luddington v. Indiana Bell Telephone Company* (7th Cir.1992), 966 F.2d 225.

zer's general manager, acted as agents for and on behalf of Stitzer. Perry alleged Stitzer knew these employees were discriminating against him; additionally, Perry alleged that although he promptly reported Houk's battery against him, Stitzer ignored his complaint. Although the mere knowledge and appreciation of a risk is not the equivalent of intent, *National Can Corp., supra,* citing *Tribbett v. Tay Mor Industries, Inc.* (1984), Ind.App., 471 N.E.2d 332, Perry argues Stitzer intended to discriminate against him because Houk, Weidner, and Loury acted pursuant to Stitzer's instructions.

When reviewing a grant of summary judgment, we resolve any doubt as to facts or inferences in Perry's favor. *See Bischoff Realty, supra.* Whether Houk, Weidner, and Loury acted independently and not as the alter ego of Stitzer is a factual matter for jury resolution. *See Fields, supra,* at 636. Because genuine issues of material fact remain as to Stitzer's knowledge or countenance, and because Stitzer is not entitled to summary judgment as a matter of law, we find the trial court improperly granted summary judgment in favor of Stitzer.

B.  Perry v. Houk, Weidner, and Loury

 Perry argues the trial court erroneously concluded that the exclusive remedy provision of the Act shields Houk, Weidner, and Loury from common-law liability for the torts they may have committed. We agree. The facts most favorable to Perry indicate that the three men committed various intentional torts against him while he was employed at Stitzer. An employee is not immune from a common-law tort action merely because he has the same employer as the plaintiff. IND.CODE 22–3–2–6, IND.CODE 22–3–2–13; *Seiler v. Grow* (1987), Ind.App., 507 N.E.2d 628, 631, *trans. denied.* If the Act does not provide immunity for an employer's intentional tort, surely it does not provide immunity for an employee's intentional tort against another employee. Again, the grant of summary judgment in favor of Houk, Weidner, and Loury was erroneous because

genuine issues of material fact concerning various intentional torts remain unresolved.

*Conclusion*

The trial court correctly disposed of Perry's § 1981 claim and his request for retroactive application of the 1991 Act. The trial court erred, however, when it disallowed Perry's claims of intentional torts because genuine issues of material fact exist which preclude the entry of summary judgment on these issues. Accordingly, we remand this case to the trial court for consideration of Perry's common law claims in accordance with this opinion.

Affirmed in part, reversed in part.

RATLIFF, Senior Judge, and ROBERTSON, J., concur.