Laverne BRIGGS, et al., Appellant–
Petitioners,

v.

Charles O. FINLEY, et al.,
Appellee–Defendants.

No. 64A05–9307–CV–246.

Court of Appeals of Indiana,
First District.

March 31, 1994.

Transfer Denied July 19, 1994.

David W. Stone, IV, Anderson, Robert L. Lewis, Gary, for appellant.

Thom W. Kramer, Buoscio, Pera, Kramer & Nowak, Merrillville, for appellee.

BAKER, Judge.

Appellant-plaintiff Laverne Briggs challenges the trial court's entry of summary judgment in favor of appellee-defendant Charles O. Finley in his negligence action[1] contending that the trial court erred in granting Finley summary judgment because there are genuine issues of material fact precluding summary judgment.

### FACTS

The uncontroverted facts relevant to this appeal are that Finley owns and operates a farm located on Highway 35 in LaPorte, Indiana. Finley works in Chicago, Illinois during the week and spends his weekends at his LaPorte farm. On his approximately 200–acre farm Finley has a residence, several barns, buildings, and fields.

In 1988, Finley had five horses, including one Arabian mare which was with foal. He contained the horses in a 600 foot by 150 foot corral. The gate to the corral was secured with a chain and padlock. The corral was connected to an adjacent field and a barn. The field was fenced-in and the fence gate was secured by a bolt and chain lock. The connecting barn's front door opened into the corral to permit free ingress and egress by the horses. The barn's south side door was

---

1. The only parties to this appeal are Briggs and Finley. The other original plaintiff Tressie Briggs, who did not marry Briggs' until after the accident, does not appeal the trial court's grant of summary judgment for Finley on her claim for damages for loss of consortium. The other original defendant Briggs designated in his complaint as an "unknown corporation."

secured with latches on both sides, and opened into the adjacent fenced-in field. The horses could not jump the fence or open the gates or latches themselves. No horse had ever escaped from the corral-barn-field enclosure.

Finley employed Allen McDaniel, an inmate of the Summitt Farms Work Release Center of the Indiana Department of Corrections, part-time to feed his horses.[2] Finley usually talked to McDaniel from Chicago by telephone daily or every two or three days. However, Finley did not expect McDaniel to answer the telephone each time he called. On or about March 7, 1988, Finley reprimanded McDaniel after catching him asleep during working hours. On March 9, 1988, McDaniel quit without notice, and Finley did not discover this until March 12 or 13.

Sometime before March 11, 1988, the side door to the horse barn was opened and the gate to the fenced-in field adjacent to the corral and barn was unlocked and left open allowing Finley's horses to get loose. There is no evidence who opened the gate. On March 11, 1988, at approximately 11:30 p.m., Briggs was on his way to work when he passed by the Finley farm and collided with Finley's Arabian mare which had wandered out of its enclosure and onto the highway. As a result of the collision, Finley's horse died and Briggs sustained personal injuries and damage to his automobile.

Finley was in Chicago at the time of the collision and did not return to his LaPorte farm until the evening of March 12. Finley did not discover that his horses were not in their enclosure until he saw them running loose on the morning of March 13, 1988. Finley did not learn of Briggs' collision with his Arabian mare until later that day.

On February 9, 1989, Briggs filed a complaint against Finley alleging that he was negligent and careless in one or more of the following respects:

A. Failed to hire and keep on the premises adequate number of capable personnel to properly maintain, contain and control the livestock and particularly the horses of the farm;

B. Failed to properly train and/or instruct the employees and personnel working on the farm;

C. Failed to properly contain, secure and control the livestock and particularly the horses of the farm; and

D. And [was] otherwise negligent so as to allow the livestock and particularly a certain horse to be unsecured, uncontained and uncontrolled.

Record at 13. Finley answered the complaint denying any negligence or liability as a result of the collision and claiming that Briggs' negligence was the sole cause of the accident. On August 13, 1992, Finley filed a summary judgment motion against Briggs asserting that he was not liable to Briggs because he was not negligent in the manner in which he contained his horses and because he had no knowledge that his horses were loose prior to the collision. In opposition to Finley's motion, Briggs argued that summary judgment was precluded because there were genuine issues of material fact as to whether Finley was liable for Briggs' injuries because "Finley chose the easy way out" and "negligently and carelessly hired [a] cheap, incompetent, and inexperienced" "imprisoned convict" at minimum wage to feed his horses and that this "obviously led to the accident that injured and disfigured [him]" and because Finley did not employ a caretaker during the evening hours to watch over the horses to make certain they did not get loose and run onto the highway.[3] Record at 47–48; 77–78.

After a hearing the trial court entered summary judgment in favor of Finley. Briggs appeals now claiming that Finley failed to establish that he had no knowledge of the horses' escape and that he was not

---

2. Officials from the Summitt Farms Work Release Center transported McDaniel to Finley's farm every day about 7:30 a.m. and picked him up at 2:00 p.m. McDaniel also worked five days per week at a restaurant from 3:00 p.m. until approximately midnight.

3. Briggs' insistence on referring to McDaniel as "convict labor," "prisoner," "cheap prison labor," "cheap, incompetent, and inexperienced prison help," "inexpensive convict labor," and the like, rather than by name, is not well taken.

negligent in hiring, retaining, and supervising McDaniel.

## DISCUSSION AND DECISION

### I.  Standard of Review

Summary judgment is appropriate only when the evidentiary matter designated to the trial court shows that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Tucher v. Brothers Auto Salvage Yard* (1991), Ind.App., 564 N.E.2d 560, 562, *trans. denied;* Ind.Trial Rule 56(C). In reviewing the propriety of a ruling on a motion for summary judgment, we apply the same standards as the trial court and review all the pleadings, depositions, admissions, answers to interrogatories, and any affidavits designated to the trial court in the light most favorable to the nonmovant. *Id.* The movant bears the burden of proving the propriety of summary judgment, and all rational assertions of fact and reasonable inferences to be resolved therefrom are deemed to be true and are viewed in the nonmovant's favor. *Ramon v. Glenroy Constr. Co.* (1993), Ind.App., 609 N.E.2d 1123, 1127, *trans. denied.*

The movant must establish the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law, before the burden shifts to the nonmovant to file affidavits or other materials showing the existence of a genuine issue for resolution by the fact-finder. *Callis v. State Auto. Insurance Co.* (1991), Ind.App., 579 N.E.2d 129, 131, *trans. denied.* A genuine issue of material fact exists where facts concerning an issue which would dispose of litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. *Schwartz v. Castleton Christian Church, Inc.* (1992), Ind.App., 594 N.E.2d 473, 475, *trans. denied.*

A defendant is entitled to judgment as a matter of law when he shows that the undisputed material facts negate at least one element of the plaintiff's claim for relief. *Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305, 1307. A court must grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Watson Rural Water Co. v. Indiana Cities Water Corp.* (1989), Ind.App., 540 N.E.2d 131, 139, *trans. denied* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In this instance, there is no genuine issue of material fact, because a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial. *Id.* The movant is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of his case to which he bears the burden of proof at trial. *Id.*

Briggs' action is one for negligence. Summary judgment is ordinarily not appropriate in negligence cases. *Lucas v. Dorsey Corp.* (1993), Ind.App., 609 N.E.2d 1191, 1198, *trans. denied.* In order to prevail in a negligence action, Briggs had to establish the three elements for actionable negligence: (1) a duty flowing from Finley to him, (2) a breach of that duty, and (3) injury to Briggs resulting from that breach. *See Tucher,* at 562. Finley acknowledges that as the owner of domestic animals he had a duty to exercise ordinary care to keep his horses confined and not to let them stray out onto a traveled highway. Thus, the questions remaining are whether Finley breached this duty and, if so, whether the breach resulted in Briggs' injury.

Finley contends that summary judgment was proper because the evidentiary materials show that he was not negligent in his choice of confinement or in recapturing his horses after learning they were loose. Briggs counters that summary judgment was improper because Finley failed to establish that he did not have constructive knowledge the horses were loose before the accident or that he did not negligently employ McDaniel to feed his horses.

## II. Knowledge of the Horses' Escape

Briggs first contends that summary judgment was improper because although Finley established that he did not have actual knowledge of the horses' escape, Finley failed to make a prima facie showing that he did not have constructive knowledge through his agent-employee McDaniel. He argues that it was Finley's burden, as the moving party, to establish that he did not have constructive knowledge of the horses' escape.

Both parties devote considerable time addressing Finley's knowledge, or lack thereof, that his horses were loose prior to the March 11, 1988 collision. Yet Briggs did not assert such a claim against Finley in his original complaint. Therefore, Finley was not required to anticipate and defend against such a claim. See Ind.Trial Rule 8(A); Palacios v. Kline (1991), Ind.App., 566 N.E.2d 573, 576 (plaintiff commencing civil action must include in his complaint a clear and concise statement of his claim and demand for relief that will put the defendant on notice as to the evidence to be presented at trial and the theory plaintiff plans to pursue).

It was Finley who first mentioned his lack of knowledge in his memorandum in support of his motion for summary judgment. Although not required to do so, Finley established that he did not have actual knowledge that his horses had gotten loose until after his Arabian mare had collided with Briggs' car. Thereafter, in his memorandum in opposition to summary judgment, Briggs alleged for the first time that although Finley did not have actual knowledge that the horses were loose, he had constructive knowledge.[4] A memorandum opposing summary judgment is not a proper place to assert a claim against a defendant. Furthermore, Briggs' continued argument on this issue in his appellant brief does not create a

genuine issue of material fact. See Bell v. Horton (1980), Ind.App., 411 N.E.2d 648, 650.

Even in his memorandum opposing Finley's motion for summary judgment where he first alleges that Finley may have had constructive knowledge that the horses were loose, Briggs did not establish the existence of a factual issue concerning Finley's knowledge and reaction to the escape. There is absolutely no evidence who unlocked the gate through which Finley's horses escaped. Briggs' hypothesis that McDaniel was disgruntled for having been reprimanded by Finley and that in retaliation McDaniel unlocked the fence gate allowing the horses to get loose did not create a genuine issue of material fact, as it is not supported by any evidence but is merely conjecture. See C & C Oil Co. v. Indiana Dept. of Revenue (1991), Ind.Tax, 570 N.E.2d 1376, 1378–79 (plaintiff's hypothesis that it was possible that cashier did not see customers dispensing special fuel into vehicles rather than into cans was merely conjecture and did not create a genuine issue of fact). We reject Briggs' invitation to infer that McDaniel let the horses loose, that Finley "knew" that McDaniel would let the horses loose and that the Arabian mare would run into the highway, but negligently confined the horses in the corral enclosure anyway.[5] Absent a showing that McDaniel let the horses loose and that Finley knew he would release the horses on March 11, no dispute of material fact exists. No such showing was made here. Briggs did not allege or provide even a scintilla of evidence, nor is there any in the record, that McDaniel negligently or intentionally unlocked the gate and let the horses loose. Additionally, Finley's own speculation that McDaniel could have possibly let the horses loose is not evidence that he did in fact let them loose. See C & C Oil, at 1379 (Free flowing specula-

---

4. In his memorandum opposing summary judgment, Briggs also argued that there is an inference of negligence established by the doctrine of res ipsa loquitur. Record at 49. Briggs wisely abandoned this claim in his appellate brief, as it is without merit. The doctrine of res ipsa loquitur is inapplicable in cases concerning the escape of a domestic animal from its enclosure. Greathouse v. Armstrong (1992), Ind.App., 601 N.E.2d 419, 428, aff'd in part; Cochran v. Phillips (1991), Ind.App., 573 N.E.2d 472, 475; Taylor

Bros. v. Sork (1976), 169 Ind.App. 279, 348 N.E.2d 42, 46.

5. Even if McDaniel had unlocked the gates and let the horses loose, McDaniel's knowledge that the horses were loose on March 11, 1988, would not be imputed to Finley under the doctrine of respondeat superior because McDaniel quit Finley's employment on March 9, 1988.

tion cannot be construed as a fact which can shed doubt on the validity of other facts; opinions expressing a mere possibility with regard to a hypothetical situation is insufficient to establish a genuine issue of material fact) (citing *Watson v. Medical Emergency Services, Corp.* (1989), Ind.App., 532 N.E.2d 1191, 1195–96, *trans. denied* ).

The argument Briggs presented to the trial court is pure conjecture. Briggs was required to come forward with some evidence, as opposed to speculation, that Finley knew of the escape and failed to take reasonable steps to bring the horses back to confinement. *See Tucher*, at 563. His failure to do so represents a complete failure of evidence on a basic element of his claim and therefore mandates summary judgment against him. *Id.* Briggs' argument is nothing more than suppositional musings. The trial court properly granted summary judgment to Finley on this issue.

### III. Negligent Confinement

Briggs did assert in his complaint that Finley failed to contain and secure his horses properly. Accordingly, the material fact relevant to this claim is the reasonableness of the method of confinement chosen by Finley.

Although the owner of an animal has a common law duty to confine it, the escape of an animal is not negligence per se on the part of the owner. *Greathouse*, at 428; *Cochran*, at 474. In order to prevail, an injured party must establish (1) that the owner placed the animal in confinement which he knew or should have known would be ineffective and could reasonably foresee the animal would escape therefrom, or (2) that the owner knew the animal had escaped but took no reasonable steps to bring it back to confinement. *Id.; see also Blake v. Dunn Farms, Inc.* (1980), 274 Ind. 560, 413 N.E.2d 560, 563; *Corey v. Smith* (1954), 233 Ind. 452, 120 N.E.2d 410, 412; *Eisman v. Murdock* (1989), Ind.App., 542 N.E.2d 236, 237; *Weaver v. Tucher* (1984), Ind.App., 461 N.E.2d 1159, 1161; *Leek et. al v. Lumpkin* (1967), 141 Ind.App. 153, 226 N.E.2d 913, 914. Thus, the mere fact that an animal is loose is not alone sufficient cause or basis to support a finding of negligence. *Id.*

It is well settled that the legal duty owed by the owner in restraining and confining his animal is that of reasonable care under the circumstances. *Ross v. Lowe* (1993), Ind., 619 N.E.2d 911, 913. The safeguards to be observed and the foresight to be exercised in restraining and confining an animal depend upon the circumstances of the particular case, and are usually matters to be resolved by the fact-finder. *Id.*

The uncontradicted evidence relevant to this claim is that Finley locked his horses in a corral secured by chains and padlocks. The corral was connected to a secure barn which opened into a field which was fenced-in and secured with a bolt and chain lock. The horses had never before escaped. The horses could not unfasten the locks or jump over the corral or fence. Finley was out of town and did not know that the Arabian mare was out of its enclosure until after the collision. The trial court correctly determined that, as a matter of law, Finley was not negligent in the manner in which he confined his horses and could not reasonably foresee his horses were likely to escape. *See Eisman*, at 237–38 (as a matter of law, absent owner was not negligent in the manner in which he confined his horse where horse was confined in a fenced in field secured by two chains with snap locks which could not be opened by the horse).

Under *Eisman, Weaver,* and *Leek*, it was incumbent upon Briggs to sustain the allegations in his complaint with substantial evidence of probative value to establish the existence of a factual issue concerning the security of the corral-barn-field enclosure. Because Briggs did not present a different version of the facts for the trier of fact to resolve, summary judgment was proper. *See Tucher*, at 563.

### IV. Negligent Employment

Next Briggs contends that summary judgment was improper because there was a genuine issue of material fact as to whether Finley was negligent in employing McDaniel to feed his horses. Specifically, Briggs ar-

gues that Finley failed to address this claim in his summary judgment motion, and thus, summary judgment was improper. Alternatively, Briggs argues that Finley is responsible for his employee's actions and that if McDaniel let the horses loose, then Finley is responsible.

■ Ordinarily a movant's failure to establish that he was entitled to judgment as a matter of law in his summary judgment motion would lead to the denial of summary judgment. *See* Ind.T.R. 56(C). However, where the nonmovant responds to the moving party's motion for summary judgment by establishing there is no genuine issue of material fact and the moving party is entitled to summary judgment, then summary judgment against the nonmovant is proper. Nonetheless, Briggs chose to further address this claim establishing facts relevant to the issue.

Here, Finley failed to address Briggs' assertion that he negligently employed and supervised McDaniel; therefore, the burden never shifted to Briggs to assert additional materials establishing the existence of a genuine issue on this claim. Because Finley failed to meet his burden on this claim, Briggs was entitled to rest on his pleadings and summary judgment would have been improper if Briggs' allegations were supported by the evidence. Fortunately for Finley, Briggs' allegations were not supported by the evidence.

■ Here, Briggs essentially claims that Finley's confinement of his horses was negligent because he allowed "inexpensive convict labor" to feed his horses daily and did not employ someone to watch the horses twenty-four hours per day to ensure that they did not escape. He also argues that because Finley had recently reprimanded McDaniel for sleeping, Finley should have expected McDaniel to do something rash or careless, and to realize that the horses confinement in the corral-barn-field enclosure would no longer be effective.

■ Whether McDaniel was a good or poor employee is of no consequence in light of our findings above. McDaniel's employment is not a material issue here because Finley's method of confining his horses in the corral-barn-field enclosure was necessarily sufficient alone (*see* Issue II). Thus, Finley's employment of someone to feed his horses daily while the horses were contained within the enclosure does not make the horses' confinement within the enclosure negligent. Finley's part-time employment of McDaniel at minimum wage to feed his horses and his failure to speak with McDaniel daily does not make the confinement unreasonable under the circumstances.[6]

■ Furthermore, McDaniel terminated employment on March 9, and nothing shows that the horses escaped while McDaniel was still employed by Finley. Thus, Briggs' allegation of negligent employment also fails because the employment relationship did not exist at the time of the horses escape. The trial court properly entered summary judgment against Briggs.

[28–30] Even if were we to blindly assume that McDaniel let the horses loose before he quit his job, Finley would not be responsible because he did not authorize such action nor would such action be in his service. Under the doctrine of respondeat superior, an employer is responsible for the actions of his employee only if the employee is acting within the scope of his employment. *Perry v. Stitzer Buick, GMC, Inc.* (1992), Ind.App., 604 N.E.2d 613, 617. An employee acts outside the scope of his employment where he acts on his own initiative and not in the service of the employer. *Id.*

■ Under this same assumption, Finley cannot be held responsible under the principle of negligent retention of an employee either. Although under certain circumstances an employer may be liable for the action of an employee who is not acting within the scope of his employment, under the principle of negligent retention an employer

---

6. Briggs' persistent attempts to convince us that Finley was negligent simply because he hired a work release prisoner to feed his horses at minimum wage is not convincing. Employment of a work release inmate to feed horses is not negligence per se. Furthermore, we applaud Finley's efforts in assisting the State in rehabilitating inmates and in helping inmates develop skills which they may utilize upon release in their individual efforts to become productive members of our society.

may be liable for retaining an employee only if he knows the employee is in the habit of misconducting himself in a manner dangerous to others. Here, in all the materials designated and considered by the trial court there was no evidence that McDaniel habitually endangered others. The sole complaint against McDaniel was that he once took a nap during working hours. As a matter of law, this does not constitute habitual misconduct nor endangerment to others.

### CONCLUSION

As the evidence established that there was no genuine issue of material fact and that Finley was entitled to judgment as a matter of law, the trial court properly granted Finley's motion for summary judgment.

Judgment affirmed.

ROBERTSON and NAJAM, JJ., concur.