

ATTORNEYS FOR APPELLANT

Timothy S. Schafer
Timothy S. Schafer, II
Todd S. Schafer
Schafer & Schafer, LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Leslie B. Pollie
Travis W. Montgomery
Kopka Pinkus Dolin PC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Gacsy,

*Appellant-Plaintiff,*

v.

Todd Reinhart[1],

*Appellee-Defendant*

March 4, 2020

Court of Appeals Case No.
19A-CT-1345

Appeal from the LaPorte Superior
Court

The Honorable Richard R.
Stalbrink, Jr., Judge

Trial Court Cause No.
46D02-1601-CT-126

**Baker, Judge.**

---

[1] Although mistakenly spelled in the caption for this cause as "Reinhart," in fact, the correct spelling of this party's last name is "Reinert." Appellee's Br. p. 5. To avoid confusion, we will continue to use "Reinhart" in the caption, but will use the correct spelling throughout the opinion.

[1] Robert Gacsy filed a complaint against Todd Reinert after Reinert's horses escaped their confinement, resulting in injuries to Gacsy. The trial court granted an order in limine excluding all evidence related to the alleged prior escapes of Reinert's horses. Gacsy violated the order in limine multiple times during the first trial, resulting in a mistrial. The trial court warned Gacsy that further violations could result in dismissal. During the second trial, Gacsy made a statement that the trial court found was a violation of the order in limine. The trial court then declared a mistrial and dismissed the complaint with prejudice. Gacsy now appeals, arguing that (1) the order in limine was erroneous; and (2) even if the order in limine was proper, it was erroneous to dismiss the complaint.

[2] We find that Gacsy's statement at the second trial did not violate the order in limine. We further find that the order in limine was improper and that Gacsy should not have been sanctioned for violating it following the first trial. Therefore, we reverse and remand for further proceedings and with instructions to, among other things, strike the sanctions order against Gacsy.

## Facts[2]

[3] On January 22, 2016, Gacsy filed a complaint against Reinert alleging that in June 2014, Reinert's "horse confinement was negligently maintained which

---

[2] We held oral argument in Indianapolis on February 19, 2020. We thank counsel for their written and oral presentations.

permitted the horses to get free and roam at large," allowing one of the horses to collide with Gacsy, "knocking him to the ground [and] causing him injuries." Appellant's App. Vol. II p. 20-21. One of Gacsy's main theories of the case was that Reinert knew his fence was ineffective and inadequate prior to the incident involving Gacsy. After an unsuccessful mediation, the trial court set the matter for a jury trial beginning March 20, 2018.

[4] Two weeks before trial, Reinert filed a motion in limine, seeking to exclude all mentions, comments, questions, arguments, and any other references to "[t]estimony or evidence regarding any incidents previous or subsequent to the incident giving rise to this lawsuit in which one or more of [Reinert's] horses is alleged to have escaped its confinement[.]" *Id.* at 25, 43. Following argument, on March 15, 2018, the trial court granted the motion.

[5] During opening statements, Reinert objected four times to statements made by Gacsy's attorney that violated the order in limine; the trial court sustained each objection. Specifically, counsel for Gacsy made the following objectionable comments:

- "After necking down the fence, the horses would get out, start roaming around at large in violation of the statute." Tr. Vol. II p. 204.

- "You'll learn there was a particular area of the fence where the horses would get out most frequently . . . ." *Id.* at 209.

- "You'll learn when these horses had gotten out, [Reinert] unbelievably just tied a ladder to the wood post." *Id.* at 210.

- "Frank . . . says, hey, [Gacsy], neighbor's horses are out again. What you'll find out is by this time the police had arrived and pulled in . . . ." *Id.* at 215.

Reinert moved for a mistrial, in which Gacsy ultimately joined. The trial court granted the motion from the bench.

[6] Following the mistrial, Reinert filed a motion to dismiss. Following briefing and a hearing, the trial court granted sanctions against Gacsy but denied Reinert's request for a dismissal. In its order, the trial court warned that "[f]urther misconduct of this nature during the next trial in this cause will result in total dismissal of this cause with prejudice." Appellee's App. Vol. II p. 85. Gacsy filed another motion to reconsider regarding the order in limine, further argument took place, and the trial court again allowed the original order to remain in place.

[7] The second trial began on May 14, 2019. A few minutes into Gacsy's opening statement, counsel made the following comment:

> You're going to learn [Reinert's fence] wasn't built very well and that about two months before [Gacsy] was injured it found a failure. That's the words [Reinert] will tell you. The fence found a failure . . . .

Tr. Vol. III p. 200. Reinert objected and moved for a mistrial and dismissal. Gacsy's counsel defended the statement by citing to the following portion of the deposition of Reinert, when Reinert was discussing a prior escape:

> Q. Would you agree with me, as you sit here today, that your confinement was, in fact, ineffective and inadequate to contain the horses?
>
> A. It was good for a lot of years, then it apparently found a failure.

Appellant's App. Vol. III p. 81.

[8] The trial court took the request for mistrial and dismissal under advisement and adjourned for the day. The next day, the trial court orally granted the request for mistrial and dismissed the case with prejudice, concluding that the only possible interpretation of "found a failure" was that the horses had escaped in the past. The trial court noted that before Gacsy's attorney made the statement in question, the trial court "fully anticipated getting an offer of proof outside the presence of the jury where I would get facts and evidence before me to be able to allow me to lift the order in limine, but we didn't get to that point." Tr. Vol. III p. 226.

[9] On May 17, 2019, the trial court issued a written order finding and concluding, in relevant part, as follows:

> 25. The Court has already found that [Gacsy's] Counsel intentionally caused [a] mistrial in the first trial and sanctioned them accordingly. The only reason that the original trial did not result in dismissal is because the egregious misconduct of [Gacsy's] Attorneys was of a degree never experienced by this Court and the Court did not warn [Gacsy's] Attorneys that their conduct could result in dismissal.

26.    Prior to the outset of the second trial, as well as during, [Gacsy's] Counsel was reminded several times of the importance of complying with the Court's orders. They were also repeatedly reminded that this meant there could be no reference to prior or subsequent escapes by the horses. Yet not even five minutes into [Gacsy's] Counsel's opening statement they referenced a prior escape by the horses. . . .

27.    Based upon the amount of verbal and written warnings about this type of behavior throughout both trials, this court finds that the conduct of [Gacsy's] Attorney was intentional and reckless. Based on the forgoing, the Court finds that [Gacsy's] Attorneys engaged in egregious misconduct and caused a mistrial making the imposition of sanctions just.

\*\*\*

29.    This flagrant disrespect for the Court by [Gacsy's] Counsel is unlike anything this Court has experienced. The Court is empowered to protect its institutional integrity against this sort of behavior with sanctions. The Court in [*Prime Mortgage USA, Inc. v. Nichols*, 885 N.E.2d 628, 651 (Ind. Ct. App. 2008)] empowers the Court to sanction with dismissal provided parties have been warned that their continued conduct will result in dismissal.

30.    As mentioned above, [Gacsy's] Counsel were warned repeatedly that continued violation would result in dismissal. Therefore, dismissal with prejudice is just.

Appealed Order p. 6-8 (internal citations omitted). Gacsy now appeals.

# Discussion and Decision

## I. Dismissal

[10] Gacsy first argues that the statement made by counsel during the opening argument of the second trial did not violate the order in limine; consequently, dismissal was erroneous. Initially, we note that dismissal should be a last resort: "[a]lthough Indiana does not require trial courts to impose lesser sanctions before applying the ultimate sanctions of default judgment or dismissal, we view dismissals with disfavor, and dismissals are considered extreme remedies that should be granted only under limited circumstances." *Deutsche Bank Nat'l Trust Co. v. Harris*, 985 N.E.2d 804, 814 (Ind. Ct. App. 2013); *see also Allied Prop. & Cas. Ins. Co. v. Good*, 919 N.E.2d 144, 153 (Ind. Ct. App. 2009). (observing that while trial courts have the inherent power to dismiss cases, this Court "caution[s] restraint in the use of inherent powers because of their very potency") (internal quotation marks and citation omitted).

[11] As noted above, the order in limine prohibited "[t]estimony or evidence regarding any incidents previous or subsequent to the incident giving rise to this lawsuit in which one or more of [Reinert's] horses is alleged to have escaped its confinement[.]" Appellant's App. Vol. II p. 25, 43.

[12] While Reinert focuses much of his brief on what happened during the *first* trial, our focus should be only on what happened at the *second* trial, which is ultimately what led to the dismissal. And at the second trial, the statement of Gacsy's attorney that resulted in dismissal was that the fence "found a failure."

Tr. Vol. III p. 200. In other words, counsel did not refer to horses or prior escapes. It is easily imaginable that a fence could fail without an escape of the animals being confined. A reasonable factfinder could determine that a fence with a missing section, or a post that had fallen over, or a break in the wires, had failed—even if no animals had escaped. In other words, the fact that the fence "found a failure" does not necessarily or obviously imply an escape.

[13] By stating that the fence "found a failure," it is apparent that counsel was twisting himself into proverbial knots to try to make his case while also abiding by the trial court's order. Tr. Vol. III p. 200. Counsel tried to explain to the trial court that he was faced with an impossible task: "I'm now tasked with showing the confinement was inadequate, yet they're saying [I] can't put on evidence that it was inadequate. I mean, that's what I'm trying to do." *Id.* at 211.

[14] Given the strict confines within which Gacsy was operating, we can only conclude that the benign statement that the fence "found a failure" did not violate the order in limine prohibiting mention of prior escapes. Because Gacsy did not violate the order in limine by making this statement, the trial court erred by declaring a mistrial and dismissing the case. Therefore, we reverse and remand for a new trial.

## II. Order in Limine

Next, we believe that in the interest of judicial economy, it is incumbent upon us to address the order in limine so that the issue need not be relitigated on remand.

The central nature of Gacsy's claim against Reinert is negligent confinement. It is well established that the owner of an animal has a common law duty to confine it. *E.g.*, *Briggs v. Finley*, 631 N.E.2d 959, 965 (Ind. Ct. App. 1994). To prevail on a claim of negligent confinement, an injured party must establish that (1) the owner placed the animal in a confinement (2) that he knew or should have known would be ineffective and (3) could reasonably foresee the animal would escape therefrom.[3] *Id.* The legal duty owed by the owner in restraining and confining his animal is that of reasonable care under the circumstances. *Id.*

Gacsy directs our attention to a wealth of authority from other states providing that prior and subsequent escapes are relevant and admissible in negligent confinement cases. *See* Appellant's Br. p. 18-21. We have been unable to find any Indiana cases directly standing for that proposition, but we note that on at least one occasion, this Court found that negligent confinement had not been established where, among other things, the horses at issue had never before escaped. *Briggs*, 631 N.E.2d at 965. Based on the lack of history of escape,

---

[3] An injured party can also prevail on a claim of negligent confinement by showing that the owner knew the animal had escaped but took no reasonable steps to bring it back to confinement. *Briggs*, 631 N.E.2d at 965. This prong of negligent confinement is not at issue in this appeal.

together with evidence regarding the way in which the owner secured the animals, this Court found that the owner could not have reasonably foreseen that his horses were likely to escape. *Id.*

[18] Because the foreseeability of the escape of the horses is directly at issue in a negligent confinement claim, we can only find that it was erroneous to exclude evidence related to the prior escapes of Reinert's horses. Indeed, to prove his claim, Gacsy was *required* to prove that Reinert knew that his confinement was inadequate and ineffective before Gacsy was injured. *See Pedersen v. White-Evans Elevator Co.*, 511 N.E.2d 460, 464-65 (Ind. Ct. App. 1987) (holding that it is erroneous to prohibit plaintiff from presenting evidence that is "vital" to their claim); *see also Cochran v. Phillips*, 573 N.E.2d 472, 474 (Ind. Ct. App. 1991) (holding that the injured party "will prevail *if he shows* the animal owner placed the animal in confinement which the owner knew or should have known would be ineffective") (emphasis added).

[19] Reinert does not respond to the substance of Gacsy's argument on this issue in his appellate brief. But before the trial court, Reinert relied on *Greathouse v. Armstrong*, 601 N.E.2d 419 (Ind. Ct. App. 1992), *aff'd in relevant part*, 616 N.E.2d 364 (Ind. 1993). In that case, a man died after the motorcycle he was riding collided with the defendant's bull, which had escaped from its enclosure. One of the issues on appeal was whether the trial court had properly excluded evidence of prior incidents in which the bull had similarly escaped. The prior escapes occurred in 1982 and 1983, whereas the motorcycle accident occurred in 1987. In affirming the exclusion of the evidence, this Court, among other

things, relied on the remoteness in time of the prior escapes. *Id.* at 425. In this case, in contrast, Reinert's horses allegedly escaped approximately two months before the incident involving Gacsy—substantially less remote than four or five years, as in *Greathouse*. Therefore, we do not find that *Greathouse* requires that we affirm the trial court.

[20] The alleged prior escapes of Reinert's horses, as well as the condition of the fence, are directly relevant to Gacsy's claim. Therefore, evidence related to those escapes should be admitted in a new trial.

[21] Additionally, we note that the trial court imposed sanctions upon Gacsy for the failures to abide by the order in limine in the first trial. Because we find that the order was improper and placed Gacsy's counsel in an impossible position, we direct the trial court to strike the sanctions on remand.

[22] The judgment of the trial court is reversed and remanded for further proceedings and with instructions to strike the sanctions against Gacsy and to permit the introduction of evidence related to the prior escapes of Reinert's horses on retrial.

Riley, J., and Brown, J., concur.