Charles GREEN and Jennie Green,
Appellants (Plaintiffs Below),

v.

Michael PERRY and Bodor Corporation,
d/b/a Explorer Van Company,
Appellees (Plaintiffs Below).

No. 43A04–8903–CV–73.

Court of Appeals of Indiana,
Fourth District.

Feb. 5, 1990.
Rehearing Denied March 30, 1990.

Jay L. Lavender, Christopher D. Kehler, Lavender Law Offices, Warsaw, for appellants.

Edward T. Murphy, Jr., Robert T. Keen, Jr., Miller, Carson & Boxberger, Fort Wayne, for appellees.

CHEZEM, Presiding Judge.

### Case Summary

Plaintiffs–Appellants, Charles and Jennie Green ("the Greens"), appeal the trial court's entry of summary judgment in favor of Defendant–Appellee, Bodor Corporation d/b/a Explorer Van Company ("Explorer"). We reverse.

### Issue

The Greens raise three (3) issues, which we restate as two (2):

I. Whether there was evidence from which a jury could infer that Michael Perry was an employee of Explorer.

II. Whether there was evidence from which a jury could infer that Michael Perry was acting as an agent of Explorer at the time Charles Green was injured.

### Facts

Charles Green and Michael Perry delivered vans for Explorer. Green and Perry were not paid a salary, or compensated hourly; both were paid according to the services which they performed for Explorer. Explorer did not withhold any taxes or social security and did not provide any benefits or pay expenses.

On January 31, 1986, Dan Alwine, the dispatcher for Explorer, told Green and Perry that there were no deliveries for them that day. Alwine told Green that someone would take him home. Later, Alwine asked Perry to take Green home; Perry agreed to do so. While Perry was taking Green home, his truck collided with another vehicle which allegedly caused injury to Green.

On January 28, 1988, the Greens filed a complaint which alleged Charles Green was injured as a result of Perry's negligence. Jennie Green sought compensation for a loss of consortium. Explorer was named as a defendant under the theory of respondeat superior.

Explorer filed a motion for summary judgment and filed supporting affidavits which alleged that Perry was an independent contractor and not an employee; therefore, Explorer could not be held liable by virtue of respondeat superior.

In response, the Greens filed an affidavit of Charles Green which alleged that Perry had admitted to Green just prior to the accident that Explorer had hired Perry as a sales representative. Furthermore, the Greens argued that Explorer could be held liable under one of three different theories: (1) Perry was actually an employee of Explorer; (2) Perry was an agent of Explorer; or (3) Perry was a gratuitous servant of Explorer.

The trial court made findings and entered judgment in favor of Explorer.

### Discussion and Decision

We first note that while the trial court's entry was not designated as findings of fact and conclusions of law, pursuant to Ind. Trial Rule 52, the court's entry does appear to make findings of fact. Findings of fact are inappropriate in a proceeding for summary judgment since such judgment may only be entered if there is no genuine issue of material fact. *Celina Mutual Insurance Co. v. Forister* (1982), Ind.App., 438 N.E.2d 1007. Thus, this court is not bound by the findings of the trial court and the standard on review is the same as it was for the trial court: whether there was no genuine issue of material fact, and the moving party was entitled to judgment as a matter of law. *Farm Bureau Co-op. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, *reh. denied.* While the conclusions of law explain the theories on which the trial court relied, they do not change our scope of review. *Delk v. Board of Commissioners of Delaware County* (1987), Ind.App., 503 N.E.2d 436; 3 Ind.Prac.Rules of Proc. Ann. (Harvey), § 56.20, p. 646.

A fact is material for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action. *Delk*, 503 N.E.2d at 438. The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom, are viewed in favor of the non-moving party. *Jones v. Marengo State Bank* (1988), Ind.App., 526 N.E.2d 709.

When another party is injured as the result of an employee performing work within the scope of his employment, the doctrine of respondeat superior requires that the business pay the attendant costs which accompany the benefit. *Stropes v. The Heritage House Children's Center of Shelbyville* (1989), Ind., 547 N.E.2d 244; *Shelby v. Truck and Bus Group of General Motors* (1989), Ind.App., 533 N.E.2d 1296 (citing *Prosser and Keeton on Torts* (5th ed.) § 69, p. 500). The existence of a master-servant or agency relationship, which gives rise to the application of respondeat superior, is normally a question of fact. *Bradford v. Chism* (1963), 134 Ind.App. 501, 186 N.E.2d 432.

Although Green raises three (3) theories of respondeat superior liability, we will address them as two (2) since both the employee theory and the gratuitous servant theory essentially deal with the master-servant relationship.

## I

### A

The Greens argue that Perry was not an independent contractor, but rather was an employee of Explorer. Charles Green filed an affidavit which alleged that Perry admitted to Green on the day of the accident that Perry had just been hired as a sales representative for Explorer. Both Perry and Explorer denied the allegation and presented evidence which indicated that Perry was not hired as a sales representative until nearly three (3) months later. Furthermore, Explorer presented evidence which indicates that sales representatives are not employees, but rather are independent contractors.

While parties may be designated as "independent contractors," as opposed to "employees," an employer-employee relationship may still be found if enough of the indicia of an employment relationship exists. *Furr v. Review Board Indiana Employment Security Division* (1985), Ind. App., 482 N.E.2d 790. For example, if the "employer" reserves the right to control the work of the "employee," then the master-servant relationship arises, and the employer may be rendered vicariously liable for the torts of an employee committed within the scope of the employee's employment. *Hale v. Peabody Coal Company* (1976), 168 Ind.App. 336, 343 N.E.2d 316.

Control is the key factor in determining the existence of an employment relationship. Control means direction and control over the employee's work; however, control refers to the right to control, rather than its actual exercise. *Swanson v. Wabash College* (1987), Ind.App., 504 N.E.2d 327.

■ Explorer claims that Perry was an independent contractor both as a delivery-man and as a sales representative. While the evidence is undisputed that, as a deliveryman, Perry was an independent contractor, the evidence is conflicting as to his status as a sales representative. Perry admitted in his deposition that he presently has group benefits through Explorer, and that his expenses, food and lodging are now paid by Explorer. Record at 139. Furthermore, Perry is now paid one hundred dollars per day for each day worked. Record at 141.

While a showing that Perry receives group benefits, has expenses paid, and that Perry is paid on a per day basis, may not be enough to conclusively establish that a master-servant relationship exists, the evidence is sufficient to create an inference of its existence. Therefore, Perry's admission and the affidavit of Charles Green create a genuine issue of material fact on this theory.

## B

The Greens next argue that even if the evidence does not demonstrate that Perry was an employee of Explorer, Perry could be found to be a gratuitous servant of Explorer. The Greens cite us to *Trinity Lutheran Church, Inc. v. Miller* (1983), Ind.App., 451 N.E.2d 1099, in which our First District held that a member of the church who had agreed to deliver cookies for a ladies guild of the church was a gratuitous servant of the church; thus, the church was liable for negligence of the volunteer when he negligently struck a motorcyclist.

The Greens argue that *Trinity* should apply here since Perry took Green home at the direction of Explorer, and, thus, submitted himself to its direction and control.

In *Trinity*, the First District found that since the driver had subjected himself to the control of the church, the church was liable respondeat superior for the negligence of the driver. However, the proper focus in determining the existence of a master-servant relationship is whether the master had the legal right to control the services performed by the servant. *Swanson*, 504 N.E.2d 327.

While masters may be subjected to respondeat superior liability by the negligent acts of their volunteer servants, such liability should only be found when there are other indicia of a master-servant relationship. For example, in *Baxter v. Morningside, Inc.* (1974), 10 Wash.App. 893, 521 P.2d 946, 82 ALR3d 1206, the Washington Court of Appeals held that a charitable organization was liable respondeat superior, as a matter of law, where a volunteer negligently caused an automobile collision. However, in *Baxter*, the volunteer was a former paid staff member of the organization. The parties stipulated that the volunteer's duties were the same as they were when he was on staff; the only difference was that he was no longer a paid employee of the organization. Therefore, the court

concluded that the volunteer was subject to the direction and control of the charity. *Id.*

Here, there was evidence that Perry moved vans on Explorer's property, at Explorer's direction,[1] and that Perry often picked up lunch for Explorer's employees. Furthermore, Perry drove Green at the request of Explorer. A jury could infer that all of those activities were not within Perry's contractual relationship with Explorer, and, thus, were gratuitous services performed at the direction and control of Explorer.

Explorer argues that Perry was not a gratuitous servant since his act in taking Green home was of no benefit to Explorer. However, even if providing transportation for Green was of no benefit to Explorer, there was other evidence which could establish that Perry was a gratuitous servant. Therefore, there would remain the issue of whether Perry's act was within the scope of his gratuitous servitude to Explorer; that issue should be left up to the jury to decide. Thus, there were genuine issues of material fact as to whether Perry was a gratuitous servant of Explorer and whether Perry's act of driving Charles Green home was within the scope of that gratuitous servitude.

## II

Finally, the Greens argue that even if Perry was not an employee or gratuitous servant of Explorer, he was an agent, compensated or gratuitous, of Explorer. The Greens cite in support of their argument the decision of this court in *Jack Ward Chevrolet, Inc. v. Mikel* (1988), Ind.App., 525 N.E.2d 349, *trans. denied*. In *Jack Ward*, this court held that an agent's negligence may be imputed to the principal. *Id.* at 350.

In order to prove an agency relationship, a party must prove two (2) elements:

(1) the ability of the principal to control the activities of the agent;

---

1. Perry testified in his deposition that occasionally, Explorer would ask him if he would drive a van up to the front from the "yard." He testified that he would only do so if instructed and would not drive the van anywhere else. He also testified that Explorer now has paid employees to perform that task. Record at 132–133.

(2) the agreement of the agent to act for or on behalf of the principal;

*Jack Ward* at 350 (citing *Hope Lutheran Church v. Chellew* (1984), Ind.App., 460 N.E.2d 1244[2]).

■ The tort liability of the principal expressed in the doctrine of respondeat superior is based not upon the agency relationship (authorization or ratification), but upon the master-servant relationship. Thus, the touchstone of the principal's liability for the tortious acts of his agent is whether the acts are committed within the scope of the agent's employment. *Sloan v. Metropolitan Health Council* (1987), Ind. App., 516 N.E.2d 1104; *Clark v. Millikin Mortgage Co.* (1986), Ind.App., 495 N.E.2d 544; *Estate of Mathes v. Ireland* (1981), Ind.App., 419 N.E.2d 782. There is no respondeat superior liability for principals whose non-servant agents commit tortious acts. *Burkett v. Crulo Trucking Co.* (1976), 171 Ind.App. 166, 355 N.E.2d 253.

If the Greens are to prevail on their claim, they must establish a master-servant relationship whether that be as employer-employee, master-gratuitous servant, or principal-agent. There is no free-standing theory of relief based upon an agency relationship.

■ There was evidence from which a jury could infer that Explorer had the ability to control Perry's activities. An agreement to act for or on Explorer's behalf may be inferred from Perry's activities and Explorer's exercise of control. Furthermore, the nature of Perry's activities, doing whatever Explorer asked, leads to an inference that Perry's act of driving Green home was within the scope of a master-servant agency relationship. Therefore, there was a genuine issue of material fact as to the agency relationship between Explorer and Perry and whether or not Perry's act of driving Green home was within that agency relationship.

Accordingly, the judgment in favor of Explorer is reversed and this case is remanded for further proceedings.

CONOVER and STATON, JJ., concur.

2. The court in *Hope Lutheran Church* stated the requirements somewhat differently in that court also required a manifestation of the principal's consent for the agent to act. *Hope Lutheran Church* at 1247.