**Rita BEATTY, Custodial Parent of Nora K. Beatty, Deceased, and Estate of Rodger Beatty, Deceased, Appellants–Plaintiffs,**

v.

**Timothy LaFOUNTAINE, d/b/a Lafountaine Logging a/k/a Lafountaine Trucking, James Thad Martin, d/b/a JTM Express, and G.R. Wood, Inc., a/k/a American Timbex, Inc., and Wesley Lafountaine d/b/a Lafountaine Logging a/k/a Lafountaine Trucking and Rodger Beatty, Appellees–Defendants.**

No. 34A02–0805–CV–438.

Court of Appeals of Indiana.

Oct. 31, 2008.

Daniel J. Harrigan, Bayliff, Harrigan, Cord, Maugans & Cox, Kokomo, IN, Attorney for Appellants.

Mark A. Metzger, Theodore G. Hammond, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Appellants-plaintiffs Rita Beatty, as custodial parent of Nora K. Beatty, deceased, and the estate of Rodger Beatty (the Estate), deceased (collectively, the Beattys), appeal the trial court's grant of summary judgment in favor of appellee-defendant Timothy LaFountaine, d/b/a LaFountaine Logging (LaFountaine), in a wrongful death action that was initiated against LaFountaine and others following a vehicle collision that resulted in Nora's death.

The Beattys argue that summary judgment was improper because a genuine issue of material fact exists as to whether the defendant truck driver—James Martin—was an independent contractor or LaFountaine's employee when the accident occurred. The Beattys also contend that LaFountaine is liable because it assumed a nondelegable contractual duty to place Martin under its exclusive control and to ensure that the driver "took all necessary precautions for the safety of all persons affected by the work." Appellants' Br. p. 20. Thus, the Beattys maintain that the trial court erred in denying their motion for summary judgment. Concluding that the trial court properly determined that LaFountaine was an independent contrac-

tor and finding no other error, we affirm the grant of summary judgment in La-Fountaine's favor.

### FACTS

Today we are again confronted with the circumstances that have come before us in three prior appeals. The facts, as reported in the most recent appeal, *Walker v. Martin,* 887 N.E.2d 125 (Ind.Ct.App.2008), are as follows:

On December 9, 2003, Martin was driving a tractor-trailer southbound on U.S. Highway 31 at the intersection with State Road 26 in Howard County when he disregarded a red traffic signal. This caused the tractor-trailer to collide with the car in which Christopher [Moore] was a passenger and resulted in his death. At the time of the collision, Martin was hauling logs, which had been purchased by G.R. Wood, Inc., a/k/a American Timbex ("Wood") from La-Fountaine, to Wood's plant in Mooresville, Indiana.

At the time of the collision, LaFountaine was a company that was in the business of procuring and selling timber logs. Wood was in the business of producing veneer wood, which it sold to manufacturers of furniture and other products. Martin was a truck driver who had operated under the business name of JTM Express since 1994. On September 16, 2003, LaFountaine and Wood entered into an agreement in which Wood agreed to purchase forty-eight walnut logs and eight oak logs from LaFountaine for $31,500.00. On December 9, 2003, Martin loaded the logs onto his trailer at LaFountaine's site in Silver Lake, Indiana.

Starting in 1999 or 2000, Martin hauled logs for LaFountaine "on and off for three, three-and-a-half years," but began to work more frequently for him in March 2003, and Martin was LaFountaine's primary log hauler in 2003. During 2003, Martin also had hauled logs for Wood and other parties. Although Martin considered himself to be an independent contractor, he had painted LaFountaine's company logo on the side of his truck cab. Martin owned both the semi-tractor and trailer used to haul the logs, as well as the straps used to secure the logs and all of the tools on the truck. Additionally, he paid for his own fuel, insurance, and maintenance. Martin determined the route taken to transport the logs and the manner in which the logs were loaded and secured on the trailer.

At the time of the accident, Martin had a commercial driver's license and had procured a log farm exemption license plate for his semi-tractor and trailer. This license plate did not require that he purchase the $750,000.00 minimum interstate trucking insurance that the federal government required. Martin set his own rate for hauling logs and was paid by the load rather than by the hour. When he hauled logs previously for Wood, he was either paid directly by Wood or by LaFountaine.

As a result of the accident, the Moores filed a wrongful death suit against Martin, LaFountaine, and Wood on September 9, 2004. On January 9, 2007, LaFountaine filed a motion for summary judgment, claiming that it was not an employer of Martin or involved in a joint venture with him. Additionally, it contended that Martin was an independent contractor and that LaFountaine could not be held liable for his acts. The trial court granted LaFountaine's summary judgment motion on July 30, 2007.

*Id.* at 129–30. The Moores appealed, claiming that the trial court erred in deter-

mining as a matter of law that Martin was an independent contractor rather than an employee of LaFountaine. The Moores also raised the issue of whether LaFountaine owed a nondelegable duty to Christopher and was, therefore, vicariously liable under one of the exceptions to the general rule that a principal is not liable for the negligence of an independent contractor.

In applying the ten-factor analysis set forth by our Supreme Court in *Moberly v. Day,* 757 N.E.2d 1007 (Ind.2001), to determine whether an individual should be treated as an independent contractor or an employee, we concluded that the trial court properly determined that Martin was operating the truck as an independent contractor. *Walker,* 887 N.E.2d at 134. We further determined that there was no evidence demonstrating that LaFountaine's contract with Wood imposed a special duty of care. Thus, the Moores failed to show that the exception to the general rule of independent contractor nonliability applied. *Id.* at 136.

In this case, the record established that Nora Beatty, who also died in the accident, was driving the vehicle that collided with Martin. The Beattys filed a wrongful

death action against LaFountaine and the others. Thereafter, LaFountaine moved for summary judgment on January 8, 2007, claiming that it was entitled to judgment as a matter of law because the designated evidence established that Martin was not its employee or agent when the accident occurred. LaFountaine also claimed that the defendants were not engaged in a joint venture and that none of the independent contractor nonliability exceptions applied. Thereafter, the Beattys moved for partial summary judgment, claiming that LaFountaine was liable under the theory of a nondelegable contractual duty to supply the truck and driver to deliver the shipment to Wood.

Following a hearing on the motions for summary judgment on February 20, 2008, the trial court granted LaFountaine's motion and denied the Beattys' motion for partial summary judgment. The Beattys now appeal.[1]

## DISCUSSION AND DECISION

### I. Standard of Review

■ When reviewing a trial court's grant of summary judgment, we apply the

---

1. In the first appeal, we addressed various issues regarding the Moores' wrongful death action that was instituted against Wood. In that case, the Moores alleged that the trial court erred in granting Wood's motion for summary judgment because, among other things, the designated evidence established that Martin was an employee, agent, or servant of Wood when the accident occurred. *Walker v. Martin,* No. 34A05–0608–CV–424, slip op. at 2, 862 N.E.2d 330 (Ind.Ct.App. Feb.27, 2007). After examining the *Moberly* factors, we concluded that the trial court properly determined that Martin was an independent contractor when working for Wood. *Slip* op. at 12. We also determined that none of the exceptions to the general rule of nonliability for the torts of independent contractors. *Id.* at 17–18. As a result, we concluded that the trial court properly entered summary judgment for Wood.

In the second appeal, the Beattys argued that Wood and the others were liable for Nora's wrongful death because Martin was acting as Wood's agent and that Wood was vicariously liable for Martin's negligence under the doctrine of respondeat superior. *Beatty v. Martin,* No. 34A05–0608–CV–454, slip op. at 2, 5, 868 N.E.2d 73 (Ind.Ct.App. May 31, 2007). Beatty also contended that even if Martin was not an employee or agent of Wood, Wood was liable for Martin's negligence under an independent contractor exception. *Id.* at 15–16. The trial court granted Wood's motion for summary judgment and we affirmed, concluding that Martin was an independent contractor while he was working for Wood. *Id.* at 15. We also determined that none of the exceptions to the general rule of nonliability for the torts of independent contractors applied. *Id.* at 15–21.

same standard as that of the trial court. Summary judgment is appropriate if the pleadings and evidence submitted demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Jacobs v. Hilliard,* 829 N.E.2d 629, 632 (Ind.Ct.App.2005). We construe the pleadings, affidavits, and designated evidence in the light most favorable to the non-moving party, and the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Wilson v. Royal Motor Sales, Inc.,* 812 N.E.2d 133, 135 (Ind.Ct. App.2004). Because a trial court's grant of summary judgment comes to us clothed with a presumption of validity, the appellant must persuade us that error occurred. Id. If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Irwin Mortgage Corp. v. Marion County Treasurer,* 816 N.E.2d 439, 442 (Ind.Ct. App.2004).

■ Finally, we note that mere speculation cannot create questions of fact. *Briggs v. Finley,* 631 N.E.2d 959, 964–65 (Ind.Ct.App.1994). Opinions expressing a mere possibility with regard to a hypothetical situation are insufficient to establish a genuine issue of material fact. Id. Put another way, "guesses, supposition and conjecture are not sufficient to create a genuine issue of material fact to defeat summary judgment." *Midwestern Indem. Co. v. Sys. Builders, Inc.,* 801 N.E.2d 661, 666 (Ind.Ct.App.2004).

## II. The Beattys' Claims

### A. Independent Contractor

■ The Beattys argue that the trial court erred in determining as a matter of law that Martin was an independent contractor and not an employee of LaFountaine when the accident occurred. More specifically, the Beattys maintain that "there is an abundance of evidence, and inferences to be drawn from evidence, establishing a genuine issue of material fact on the issue of Martin's employee status." Appellants' Br. p. 24.

■■ As we observed in *Walker,* Martin's employment status is the focal point of our analysis because of " 'Indiana's long-standing general rule . . . that a principal is not liable for the negligence of an independent contractor.' " 887 N.E.2d at 131 (quoting *Bagley v. Insight Commc'n Co., L.P.,* 658 N.E.2d 584, 586 (Ind.1995)). Whether one acts as an employee or an independent contractor is generally a question for the finder of fact. *Mortgage Consultants, Inc. v. Mahaney,* 655 N.E.2d 493, 496 (Ind.1995). However, if the significant underlying facts are disputed, the court may properly determine a worker's classification as a matter of law. *Moberly,* 757 N.E.2d at 1009.

As discussed above, our Supreme Court has determined that when considering whether one is an employee or an independent contractor, we apply the following ten-factor analysis described in the Restatement (Second) of Agency section 220 to distinguish employees from independent contractors:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Moberly*, 757 N.E.2d at 1010 (quoting Restatement (Second) of Agency § 220(2)). The *Moberly* court determined that all of the above circumstances are considered in the analysis, and no single factor is dispositive. 757 N.E.2d at 1010. However, "extent of control" is the single most important factor in determining the existence of an employer-employee relationship. *Walker*, 887 N.E.2d at 131.

In *Walker*, we considered and weighed all of the *Moberly* factors and concluded that Martin was an independent contractor for LaFountaine at the time of the accident. In making that determination, the *Walker* court observed that the designated evidence established that, except for being told where to pick up and deliver the logs, all of the details of how the job was to be done were left to Martin's discretion. LaFountaine did not control either the method or the means of how Martin conducted his deliveries, Martin was engaged in his own hauling business, and he did not work exclusively for LaFountaine. 887 N.E.2d at 132. Moreover, Martin was not supervised in the loading, transporting, and delivering of the logs, and neither Wood nor LaFountaine was in the business of hauling logs. Indeed, both companies relied on others like Martin to perform those

tasks. The designated evidence in this case further established that Martin loaded his own truck and no one told him how to perform that task. As the designated evidence established in *Walker*, Martin chose his own driving routes when delivering the logs. Appellants' App. p. 86–87. Simply put, LaFountaine did not assume control over Martin in the loading, transporting, or delivering of logs.

The evidence also demonstrated in *Walker* and in this case that others in the locality were engaged in the business of hauling logs as specialists because after the accident occurred, another company was hired to pick up the logs Martin had been hauling and haul them. 887 N.E.2d at 132. Additionally, it was established—and LaFountaine has shown here—that Martin was a "skilled laborer," and he owned the semi-tractor and trailer used to haul the logs, as well as the straps used to secure the logs. *Id.* at 133. Martin paid for any required maintenance on his tractor-trailer, fuel used, and insurance. *Id.* The only equipment that was owned or supplied by LaFountaine was a hydraulic loader that Martin used to load the logs onto the trailer. Martin hauled logs for Wood and other companies and was free to "haul logs for any party he wished." *Id.*

Moreover, Martin's hours with LaFountaine were neither regular nor continuous. Martin did not receive an hourly wage from LaFountaine, did not keep regular hours with LaFountaine, and was paid by the load based on the number of miles he traveled or per board feet of wood that he hauled. Appellants' App. p. 88.

Additionally, it was established that LaFountaine was not in the business of hauling logs and did not earn a profit from the transportation of the logs. Rather, Martin was engaged in that type of business and he performed those services for LaFoun-

taine, Wood, and others. Although Martin had painted the LaFountaine logo on the side of his truck, he stated that he had done so as "free publicity" and to show his appreciation to LaFountaine for giving him so much business. 887 N.E.2d at 132; Appellants' App. p. 22. Finally, we observed in *Walker* that LaFountaine was a business engaged in the procuring and selling of timber logs. Therefore, we concluded that "this lone factor weighs in favor of employee status for Martin." *Id.* at 134. When considering the totality of the factors set forth in *Moberly*, we determined that

> the undisputed facts set forth in the designated evidence support the trial court's conclusion as a matter of law that Martin was an independent contractor at the time of the accident.

*Id.* at 134.

In this case, the Beattys' designated evidence similarly fails to establish that Martin was LaFountaine's employee. Indeed, the same type of evidence was designated to the trial court in this case. Because the facts, designated evidence, and the legal authority that we relied upon in reaching the result in *Walker* are nearly identical to those at issue in this case, we conclude that the trial court properly determined that Martin was an independent contractor at the time of the collision. Thus, the trial court properly granted LaFountaine's motion for summary judgment.

## *II. Nondelegable Duty*

█ Notwithstanding the determination that Martin was an independent contractor, the Beattys argue that the trial court erred in concluding as a matter of law that LaFountaine did not assume a nondelegable duty to Nora regarding the safety of the truck. In other words, the Beattys contend that the designated evidence es-

tablished that LaFountaine assumed a responsibility to Nora for her safety under the contract that Wood and LaFountaine executed. Thus, the Beattys claim that the trial court should have granted their motion for partial summary judgment.

The long-standing general rule is that a principal is not liable for the negligence of an independent contractor. *Selby v. N. Ind. Pub. Serv. Co.*, 851 N.E.2d 333, 337 (Ind.Ct.App.2006), *trans. denied.* However, in light of public policy concerns that seek to limit a principal's ability to avoid responsibility for some activities by hiring independent contractors, Indiana courts have recognized the following five exceptions to the general rule:

> (1) where the contract requires the performance of intrinsically dangerous work;
>
> (2) where the principal is by law or contract charged with performing the specific duty;
>
> (3) where the act will create a nuisance;
>
> (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and
>
> (5) where the act to be performed is illegal.

*Id.* The duties associated with these exceptions are considered nondelegable, and the principal is liable for the negligence of the independent contractor because the responsibilities are "deemed 'so important to the community' that the principal should not be permitted to transfer those duties to another." *Id.* (quoting *Daisy v. Roach*, 811 N.E.2d 862, 864 (Ind.Ct.App.2004)).

As noted above, the Beattys claim that LaFountaine should be held liable as a matter of law under the contract that was executed between LaFountaine and Wood

because that agreement imposed a nondelegable legal duty upon LaFountaine "to place ... Martin under [its] exclusive control and to ensure that ... Martin took all necessary precautions for the safety of all persons affected by the work." Appellants' Br. p. 20.

■ In determining whether a party is charged with a specific duty of care under a contract, the court examines all of the provisions set forth in the agreement. *Merrill v. Knauf Fiber Glass*, 771 N.E.2d 1258, 1268 (Ind.Ct.App.2002). Moreover, the assumption of duty by contract exception to the general rule of nonliability is not triggered merely because a contractor may have a right to inspect and test the work, approve the work and/or supervise employees of the independent contractor, or even by requiring the contractor to follow company safety rules. *Armstrong v. Cerestar USA, Inc.*, 775 N.E.2d 360, 371 (Ind.Ct.App.2002). For this exception to apply, a contract must provide for a specific duty of care, evidence that the duty was breached, and evidence that the breach proximately caused the injury. Id. at 371–72.

As did the appellants in *Walker*, the Beattys point to the following provision in support of their claim that LaFountaine must be held liable under the "contract exception" to an independent contractor's nonliability:

> The undersigned agrees that he will furnish the equipment and pay all employees assisting in the delivery of said lumber (logs) and that all persons in such work shall be subject to his sole exclusive control.

Ex. 1. In light of this provision, the Beattys argue that "LaFountaine was not only contractually obligated to transport the logs to G.R. Wood, Inc.'s facility, but he was responsible for the work of his subcontractor, James Martin." Appellants' Br. p. 21.

Notwithstanding this contention, we confronted this issue in *Walker* and observed that none of the language in the purported contract demonstrated that LaFountaine intended to assume a specific duty of care with respect to the plaintiff, travelers on public highways, or even a general duty regarding hauling logs. 887 N.E.2d at 136. More specifically, we determined that "the agreement does not define any duty of care or mention the assumption of any specific duty by LaFountaine." *Id.* Thus, we concluded that the Moores failed to establish that the contract exception to the non-liability of LaFountaine as an independent contractor applied.

We likewise observe in this case that the Beattys have not set forth any designated evidence establishing that the nondelegable duty exception to the independent contractor rule should apply with regard to Nora. Thus, the trial court properly denied the Beattys' motion for partial summary judgment.

The judgment of the trial court is affirmed.

MATHIAS, J., and BROWN, J., concur.