Albert GILBERT, an incapacitated adult, by his Guardians, Viola Parsley, Violet Hendrick, and George Gilbert, Appellant–Plaintiff,

v.

LOOGOOTEE REALTY, LLC d/b/a Loogootee Nursing Center, Appellee–Defendant.

No. 29A02–0912–CV–1188.

Court of Appeals of Indiana.

June 10, 2010.

Rehearing Denied July 22, 2010.

William C. Lloyd, Lloyd Law Office, Bloomington, IN, Attorney for Appellant.

Bryce H. Bennett, Jr., Elizabeth C. Green, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Albert Gilbert, by his guardians Viola Parsley, Violet Hendrick, and George Gilbert, appeals the entry of summary judgment against him in his personal injury action against Loogootee Realty, LLC d/b/a Loogootee Nursing Center (Loogootee). Gilbert presents the following restated issues for review:

1. Does a question of fact remain with respect to the issue of whether Loogootee was liable for Gilbert's alleged injuries under the doctrine of gratuitous servant?

2. Does a question of fact remain with respect to the issue of whether Loogootee was liable for Gilbert's alleged injuries under the doctrine of non-delegable duty?

We affirm.

The underlying facts are not in dispute. Loogootee Nursing Center is a twenty-four hour nursing care facility that offers many services to its residents, including "[a]n activity program designed to stimulate as well as entertain." *Appellant's Appendix* at 255. Among other things, Loogootee encourages volunteer groups and individuals to visit the center and provide entertainment, lead church services, assist the residents with arts and crafts activities, and visit with the residents. Generally, Loogootee's activity director coordinates the volunteer activities. This typically involves arranging a time for the volunteer individual or group to visit the center and ensuring that no other activity will be planned at the same time.

Charles C. Bruner organized a local string band known as The Charles Bruner Band (the Band). Carroll Ledgerwood was a singer and bass player in the Band. For several years, Bruner scheduled the Band to visit nursing homes in the area and provide musical entertainment. At the time of the occurrence that gave rise to this lawsuit, the Band performed once a month at each of approximately five nursing homes, one of which was Loogootee. The Band performed there on the third Tuesday of every month from 6:30 p.m. to 8:30 p.m. The Band performed in a common area inside of Loogootee's facility. Other than providing a space and coordinating the time of the Band's performances, Loogootee exerted no control over the Band. The Band came of its own accord, brought all of its equipment, chose the music to be performed, set up its equipment before performing and dismantled it and took it away when finished.

Loogootee did not pay the Band for its performances.

On April 17, 2007, the Band was scheduled to perform at Loogootee. Ledgerwood traveled to Loogootee in his car, bringing his guitar, amplifier, songbook, and a number of chairs with him. When Ledgerwood arrived, Gilbert, a resident of Loogootee who suffers from moderate mental retardation, was sitting on a swing on Loogootee's front porch. As Ledgerwood was backing into a parking space near Loogootee's front door to unload his equipment, his foot slipped off of the brake and onto the accelerator, and his car jumped over the curb. He tried to hit the brake pedal and again inadvertently hit the gas. His car traveled across the front porch, striking Gilbert, and ultimately crashing though Loogootee's wall. As a result of Ledgerwood's alleged negligence, Gilbert suffered personal injuries that rendered him unable to walk and dress himself for several months.

On December 7, 2007, Gilbert's guardians filed a complaint for damages on his behalf, naming Loogootee and Ledgerwood as defendants. Ledgerwood was sued based upon the allegation that he negligently operated his vehicle, and that his negligence resulted in personal injury to Gilbert. Gilbert alleged that Loogootee was liable for Ledgerwood's negligence upon the theory that Ledgerwood was a gratuitous servant of Loogootee at the time Ledgerwood's vehicle struck and injured Gilbert, as well as upon the theory of non-delegable duty. Ledgerwood and Loogootee answered in denial. On May 11, 2009, Gilbert filed a motion for partial summary judgment, seeking entry of judgment in his favor "on the issues of non-delegable duty, vicarious liability, and causation[.]" *Id.* at 45. On May 27, 2009, Loogootee filed a motion for summary judgment in which it claimed: (1) Ledger-

wood was not a gratuitous servant of Loogootee acting within the scope of gratuitous servitude at the time Gilbert was injured; and (2) Loogootee was not vicariously liable for Ledgerwood's actions under the non-delegable duty of care exception to the doctrine of *respondeat superior* "because he was not an employee of Loogootee Nursing Center to whom duties for its residents' protection had been delegated." *Id.* at 187. Gilbert responded with a cross-motion for summary judgment, seeking a ruling in his favor on the issues of non-delegable duty and vicarious liability. In turn, on June 23, 2009, Loogootee filed a cross-motion for summary judgment.

On October 28, 2009, the trial court granted Loogootee's motion for summary judgment and cross-motion for summary judgment, stating, in relevant part:

1. Carroll Ledgerwood was a "gratuitous servant" for Loogootee as defined in *Trinity Lutheran Church, Inc. Evansville, Indiana v. Miller,* 451 N.E.2d 1099 (Ind.Ct.App.1983).

2. Carroll Ledgerwood was not acting as a "gratuitous servant" and was not under the direction of Loogootee at the time Gilbert was injured; therefore Loogootee is not vicariously liable.

3. Loogootee is not liable to Gilbert for the acts of Carroll Ledgerwood under a "non-delegable duty of care" exception to the doctrine of *respondeat superior* as described in *Stropes v. Heritage House Childrens Center of Shelbyville, Inc.,* 547 N.E.2d 244 (Ind.1989). Carroll Ledgerwood was not acting as an employee, "gratuitous servant," independent contractor, or agent of Loogootee at the time Gilbert was injured.

4. Loogootee owed no duty giving rise to liability in tort to Gilbert for his injuries, and no action or inaction of Loogootee was the proximate cause of Gilbert's injuries. The injuries suffered by Gil-

bert as a result of being struck by Ledgerwood's motor vehicle were unexpected and not reasonably foreseen to Loogootee.

5. There are no genuine issues of material fact which preclude entry of full and final summary judgment in favor of Loogootee and against Gilbert.

*Id.* at 11–12.

Gilbert appeals the ruling in favor of Loogootee. Loogootee, on the other hand, contends the trial court erred in deeming Ledgerwood to be a gratuitous servant of Loogootee, but otherwise contends the trial court was correct in ruling that it was not liable for Ledgerwood's negligence.

Our standard of review in appeals from the grant or denial of a motion for summary judgment is well established:

> A party is entitled to summary judgment if no material facts are in dispute. . . . Ind. Trial Rule 56(C) ("[t]he judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). When reviewing the propriety of a ruling on a motion for summary judgment, this Court applies the same standard as the trial court. Review is limited to those materials designated to the trial court. The Court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the nonmoving party, and resolves all doubts against the moving party.

*Estate of Mintz v. Conn. Gen. Life Ins. Co.,* 905 N.E.2d 994, 998 (Ind.2009) (some citations omitted). The trial court's decision on summary judgment " 'enters appellate review clothed with a presumption of validity.' " *Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.,* 867 N.E.2d 203, 211 (Ind. Ct.App.2007) (quoting *Malone v. Basey,*

770 N.E.2d 846, 850 (Ind.Ct.App.2002), *trans. denied* ). Moreover,

> [a] grant of summary judgment may be affirmed upon any theory supported by the designated evidence. While the trial court here entered specific findings of fact and conclusions of law in its order granting summary judgment for the appellees, such findings and conclusions are not required and, while they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment.

*Van Kirk v. Miller,* 869 N.E.2d 534, 539–40 (Ind.Ct.App.2007) (citations omitted), *trans. denied.*

The theory of liability advanced by Gilbert against Loogootee is that of *respondeat superior.* "The general rule is that vicarious liability will be imposed upon an employer under the doctrine of *respondeat superior* where the employee has inflicted harm while acting 'within the scope of employment.' " *Barnett v. Clark,* 889 N.E.2d 281, 284 (Ind.2008) (quoting *Sword v. NKC Hospitals, Inc.,* 714 N.E.2d 142, 148 (Ind.1999)). Gilbert concedes that Ledgerwood was not paid by Loogootee to perform for its residents. Gilbert contends, however that Loogootee was vicariously liable for Ledgerwood's negligence under the principle of gratuitous servant.

We find scant few cases in Indiana that have discussed the doctrine of gratuitous servant. Although Gilbert cites numerous cases in support of his contention that the doctrine of gratuitous servitude applies here, the only case cited that specifically discusses this principle is *Trinity Lutheran Church, Inc. of Evansville, Ind. v. Miller,* 451 N.E.2d 1099 (Ind.Ct. App.1983). *Trinity* appears to be the first case in Indiana to recognize the doctrine,

and one of only two published cases that mention it. Essentially, the doctrine of gratuitous servant is a form of master-servant, or principal-agent, relationship. It appears that the relationship (i.e., gratuitous servant) giving rise to liability under this doctrine may arise when there is no direct evidence of a traditional employment agreement between the putative master and gratuitous servant because "agency may arise by implication and be shown by circumstantial evidence." *Id.* at 1102. Moreover, "[t]he duty of an agent acting gratuitously is the same as other agents." *Id.* (citing *Swift v. White*, 256 Iowa 1013, 129 N.W.2d 748 (Iowa 1964)). In the final analysis, the question whether a master-servant relationship exists depends upon the element of control. "The test for determining a master servant relationship is whether one has the right to direct and control the conduct of the alleged servant at the time of the incident." *Id.* at 1103.

Although this aspect of *Trinity* (i.e., gratuitous servant) was mentioned in *Green v. Perry*, 549 N.E.2d 385 (Ind.Ct.App.1990), *trans. denied*, it was only in passing; *Green* did not further develop the doctrine of gratuitous servant. Therefore, we are left to glean the tenets from *Trinity*. In that case, a Guild within Trinity Lutheran Church maintained a charitable program for its members who were sick or infirm. Under this program, Guild members baked cookies during the Christmas holiday and delivered them to the shut-in members of the Church. The Guild prepared a list of members who were to receive cookies, designated which Guild members would deliver cookies to certain specified recipients, and checked to insure that the shut-ins subsequently received the cookies. The Guild also picked the delivery date. On one such delivery, a Guild member's husband, Goodman, was driving with his wife to deliver cookies when he turned his vehicle into the plaintiff's motorcycle, causing serious injury to the plaintiff. The Guild knew Goodman would be driving his wife on the day in question. Goodman testified that his only purpose in driving at the time of the accident was to deliver cookies, the Guild told him where to go, and he would have gone to any address that the Guild directed.

The court focused its analysis on the issue of control and determined that the designated materials established that Goodman was acting within the scope of his gratuitous employment when the accident occurred. The parties stipulated the cookie delivery was the Guild's work. Goodman testified his only purpose in driving at the time of the accident was to deliver cookies. From this, the court concluded, Goodman "was clearly within the scope of the Guild's activity when he struck [the victim's] motorcycle." *Id.* More importantly, the court determined that "[t]he jury could have easily found from the evidence that the Guild had the right to direct and control Goodman at the time of the accident." *Id.* In discussing a claim by Goodman that the court erred in giving an instruction on the subject of control, the court concluded that the instruction was correct in that it explained that "the right of control is determinative of a master servant relation, and not merely the exercise of that control." *Id.*

The foregoing reflects that the issue of control is as critical to the existence of a master-gratuitous servant relationship as it is to any master-servant relationship. Our examination of the designated materials in this case reveals that evidence of the requisite control is lacking. Loogootee did not exercise any control whatever over the Band's musical endeavors at its facility. Loogootee had no input in determining what type of music the Band would perform, the composition of the band with

respect to the number or identity of its members, the instruments they would play, or how many songs it would perform. Indeed, it appears that Loogootee merely made sure that when the Band was scheduled to play, there were no other scheduled activities that would conflict with the Band's performance and, of course, Loogootee provided a place to play. Perhaps more to the point, Loogootee exercised no control over the Band's transportation to and from the facility of either its members or its equipment. Nor did Loogootee exercise control in any way with respect to setting up the Band's equipment in preparation for its performances.

On the evening in question, it was Ledgerwood's choice (1) to play with the Band in the first place, (2) to drive himself and his equipment to Loogootee, (3) and to unload his equipment and enter through Loogootee's main entrance when he did. We perceive no evidence creating a question of fact as to whether Loogootee reserved the requisite right to control over Ledgerwood at the time of the accident. In short, there was no such right to control. Therefore, Ledgerwood was not a gratuitous servant at the time he drove into the Loogootee facility, injuring Gilbert.

2.

■ Gilbert contends a question of fact remains as to whether Loogootee was liable for Gilbert's alleged injuries under the doctrine of non-delegable duty.

■ Generally, a principal is not liable for the negligence of an independent contractor. *Beatty v. LaFountaine*, 896 N.E.2d 16 (Ind.Ct.App.2008), *trans. denied*. In view of public policy concerns that seek to limit a principal's ability to avoid responsibility for some activities by hiring independent contractors, however, our courts have recognized five exceptions to the general rule, one of which Gilbert contends applies in the instant case. That exception is: "where the principal is by law or contract charged with performing the specific duty[.]" *Id.* at 22. The duties arising under these exceptions are considered non-delegable and the principal is liable for the independent contractor's negligence "because the responsibilities are deemed 'so important to the community' that the principal should not be permitted to transfer those duties to another." *Id.* (quoting *Daisy v. Roach*, 811 N.E.2d 862, 864 (Ind.Ct.App.2004)).

According to Gilbert, Loogootee had a non-delegable duty of care that was established by virtue of certain provisions of the Admission Agreement (the Agreement) between Loogootee and its residents. Gilbert points to two such provisions. The first is found in Section III of the Agreement, entitled "Rights and Responsibilities of Center." *Appellant's Appendix* at 33. Paragraph 3.01 of Section II provides that Loogootee "shall furnish basic Room, board, common facilities, housekeeping, laundering bed linens and bedding, general nursing care, personal assessment, social services, and such other personal services as may be required ... for the health, safety and general well-being of the Resident." *Appellant's Appendix* at 33. Gilbert contends this provision contractually binds "the Center to provide not only social services, but personal services as may be required for the health, safety, and general well-being of the resident." *Appellant's Brief* at 19. Moreover, Gilbert notes that Loogootee's marketing brochure states that its residents lead a more active and secure lifestyle in part because of the daily social calendar, that resident safety is a primary concern of Loogootee employees, and that such is "entrusted" to Loogootee's care. *Id.* Taken together, he contends, "these provisions create a voluntary duty on the part of the Center to provide

for the care and safety of its residents." *Id.*

Both parties cite *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.,* 547 N.E.2d 244 (Ind.1989) in support of their respective positions on this issue. In *Stropes,* appellant Stropes was a fourteen-year-old, mentally retarded resident of Heritage House Childrens Center of Shelbyville, Inc. (Heritage). He was molested by a nurse's aide employed by Heritage while the aide was tending to Stropes. By his next friend, Stropes filed a complaint for damages against Heritage and the aide. Heritage moved for summary judgment on grounds that because the sexual assault was outside the scope of the aide's employment, Heritage could not be held liable under the doctrine of respondeat superior. The trial court agreed and granted summary judgment in favor of Heritage. This court affirmed the trial court's ruling. The Supreme Court granted transfer and reversed.

 Stropes contended that because of the nature of its business, Heritage assumed a non-delegable duty like that imposed on common carriers to care for and protect their clients. This, Stropes argued, subjected Heritage to the extraordinary standard of care that renders common carriers liable for injuries inflicted on passengers by their employees, regardless of whether said acts fall within the scope of employment. Our Supreme Court noted that Indiana has identified the principles underlying the adoption of the common-carrier exception and extended the exception to reach enterprises other than common carriers. In particular, the Court noted the following:

"[N]o rule is better established than that a principal is responsible for the acts of his agent performed within the line of his duty, whether the particular act was or was not directly authorized, and whether it was or was not lawful. But common carriers, inn-keepers, merchants, managers of theaters, and others, who invite the public to become their patrons and guests, and thus submit personal safety and comfort to their keeping, owe a more special duty to those who may accept such invitation. Such patrons and guests have a right to ask that they shall be protected from injury while present on such invitation and particularly that they shall not suffer wrong from the agents and servants of those who have invited them."

*Id.* at 252 (quoting *Dickson v. Waldron,* 135 Ind. 507, 520, 34 N.E. 506, 510 (1893)) (citations omitted). The Court went on to explain the difference between liability under *respondeat superior* on one hand and the common-carrier exception on the other. Under the former, liability is predicated upon the employer's ability to command or control its employees' acts. Thus, "an employer can be held responsible only for those acts of [its] employee which are committed within the scope of their employment relationship." *Id.* at 253. Under the latter, on the other hand, the employer's liability is predicated upon the carrier's assumption of the responsibility for the passenger's safety, the ability to control his environment, and his personal autonomy in terms of protecting himself from harm. As a result, the employer can be held responsible for any violation by its employee of the carrier's non-delegable duty to protect the passenger, regardless of whether the act is within the scope of employment. "[T]herefore, the employer can be held responsible for any violation by its employee of the carrier's non-delegable duty to protect the passenger, regardless of whether the act is within the scope of employment." *Id.* In summarizing the development of the law pertaining to the common-carrier exception (i.e., the

doctrine of non-delegable duty), the Court set out its underlying rationale: "Indiana's common carrier exception to respondeat superior, by contrast, is premised on the ceding of power to ensure one's safety and protection from an individual to the enterprise which purports to provide it[.]" *Id.*

The question we must answer here is whether the common-carrier exception should be extended to apply in this circumstance. There is language in *Heritage* that might arguably support an expansive reading of the Court's opinion such that something akin to strict liability would result for entities such as Heritage House Childrens Center in that case and Loogootee in this case whenever a resident suffers injury or harm therein. This would go too far. In the final analysis, we cannot ignore one important fact in *Heritage*—a fact it shared with the case that was the primary focus of its analysis, *i.e.*, *Rabon v. Guardsmark, Inc.*, 571 F.2d 1277 (4th Cir. 1978), *cert. denied*, 439 U.S. 866, 99 S.Ct. 191, 58 L.Ed.2d 176. That fact is this: the person whose alleged acts caused injury to the plaintiff in those cases was an employee of the party against whom recovery was sought. In *Heritage*, a resident of a nursing home sued the nursing home when one of its nurse's aide's molested him. In *Rabon*, a woman sued a security company when one of its security guards raped her at work while the guard was on duty. Thus, we believe the best interpretation of *Heritage* is that its principles are to be understood as addressing the liability of an employer for an employee's conduct.

*Heritage* establishes that Loogootee can be held responsible for any violation by its employee of its non-delegable duty to protect its residents, regardless of whether the employee's act is within the scope of employment. We have determined in Issue 1 above, however, that Ledgerwood was not an employee or gratuitous servant

at the time he drove his vehicle into Gilbert. Moreover, Loogootee's vicarious liability for Ledgerwood's actions cannot be premised upon a theory of agency because Gilbert presented no evidence that would create a question of fact as to whether Loogootee had a right to control Ledgerwood's activities with respect to the injury-producing incident. Thus, *Heritage* does not apply.

■ In a closely related claim, citing *Beatty v. LaFountaine*, 896 N.E.2d 16, Gilbert contends that, even assuming Ledgerwood is not an employee, it is instead an independent contractor and is liable via the non-delegable duty exception to the independent contractor rule. An employee or servant is one "employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Restatement (Second) of Agency § 220(1). An independent contractor also is employed to perform services in the affairs of another, but differs from an employee/servant in that he or she "generally controls the method and details of his task and is answerable to the principal as to results only." *Walker v. Martin*, 887 N.E.2d 125, 131 (Ind.Ct.App.2008), *trans. denied*.

Gilbert designated no evidence that Ledgerwood was acting as an independent contractor with respect to Loogootee at the time of the accident. Ledgerwood was present at Loogootee at the time of the accident in anticipation of playing in a musical group later that evening that was to provide musical entertainment as a charitable and entirely voluntary service for the residents of Loogootee. The Band did not come at Loogootee's behest nor under its control. There is simply no evidence supporting the claim that the Band, and thus Ledgerwood, was an independent

contractor such that the principles discussed in *Beatty* apply. Moreover, and finally, we note that Gilbert's injuries were the result of Ledgerwood's negligent operation of his vehicle in the parking lot approximately one hour before the Band's performance was scheduled to begin, diminishing practically into nonexistence the already attenuated thread of responsibility between Ledgerwood's actions and Loogootee.

Finally on this issue, we briefly address the argument that there remains a question of fact as to whether Loogootee is liable pursuant to a non-delegable duty based generally upon its contractual obligation to keep its residents safe from harm. The trial court determined that "[t]he injuries suffered by Gilbert as a result of being struck by Ledgerwood's motor vehicle were unexpected and not reasonably foreseeable to Loogootee." *Appellant's Appendix* at 11–12. We agree. Our Supreme Court has stated,

> Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.

*Webb v. Jarvis,* 575 N.E.2d 992, 997 (Ind. 1991) (internal citations omitted). We can conceive of many foreseeable dangers inherent in living in a nursing facility such as Loogootee and from which Loogootee had a duty to protect its residents. We cannot agree, however, that a person driving a vehicle across the front porch and through the wall of the facility was one of them. No questions of fact remain with respect to the element of duty under this theory of liability.

In summary, we agree in all relevant respects [1] with the trial court's judgment and the rationale upon which it was based.

Judgment affirmed.

KIRSCH, J., and ROBB, J., concur.

---

1. We note that the trial court determined that Ledgerwood was a gratuitous servant of Loogootee in some respects, but was not acting in that capacity when he drove his car into Ledgerwood. In addressing Gilbert's contentions in this appeal, we were required to decide only whether Ledgerwood was a gratuitous servant at the time of the injury-producing event. We need not decide whether Ledgerwood was a gratuitous servant at any other time or for any other purposes. Therefore, we expressly decline to comment upon this finding of the trial court.